# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BRANDY M. SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. CIV-10-270-SPS |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

The claimant Brandy M. Smith requests judicial review of the decision of the Commissioner of the Social Security Administration denying her application for benefits under the Social Security Act pursuant to 42 U.S.C. § 405(g). She appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") committed error in determining that she was not disabled. As discussed below, the Commissioner's decision is REVERSED and the case is REMANDED to the ALJ for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born on July 29, 1978, and was thirty-two years old at the time of the administrative hearing. She has a GED and has worked as a nurse's assistant, correctional officer, and stock clerk (Tr. 21). The claimant alleges she has been unable to work since January 3, 2006, because of bipolar disorder and depression (Tr. 142).

**Procedural History**

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on November 21, 2007. Her applications were denied. ALJ Glenn A. Neel conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated February 18, 2010. The Appeals Council denied review, so the ALJ's opinion is the final decision of the Commissioner for purposes of appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had severe impairments (obesity, internal derangement of the right shoulder status post surgery, history of right lower extremity deep vein thrombosis, bipolar/major depressive disorder, and panic/generalized anxiety disorder) but retained the residual

functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b), *i. e.*, she could lift/carry/push/pull up to 10 pounds frequently and twenty pounds occasionally, and stand/walk/sit for at least six hours in an eight-hour workday, but could understand, remember and carry out only simple tasks with routine supervision, interact with supervisors and coworkers on a limited basis sufficient to complete simple tasks, have only limited contact with the public, but not work overhead with her upper right arm (Tr. 16). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was other work she could perform, *i. e.*, poultry dresser and assembler. (Tr. 21-22).

**Review**

The claimant contends that the ALJ erred by finding she was able to interact with supervisors and co-workers on a limited basis and have limited contact with the public. As part of this contention, the claimant argues that the ALJ failed to properly analyze the "other source" opinion submitted by her mental health counselor, Tommie Smith, M.S., L.P.C. The Court agrees, and the decision of the Commissioner must be reversed.

The claimant first received treatment at Oklahoma Families First, on November 3, 2005, at which time she related prior sexual abuse and resulting lifelong depression and anger (Tr. 261). She was noted to be angry, bitter and depressed with poor eye contact (Tr. 261). The diagnostic impression was bipolar disorder, and a global assessment of functioning ("GAF") score of 40 was assigned (Tr. 261). On September 20, 2007, the claimant's historical information reflected that she was raped as a teenager, and that

incident produced a daughter (Tr. 264). She said that she "relies on her mother to take care of her six children most of the time . . . [and that] [s]he is not very affectionate towards them" (Tr. 264). Her problem areas were noted to be, *inter alia*, mood lability, depression, anger, anxiety, judgment, impulse control, social interaction, and authority issues (Tr. 264-66). The claimant reported living in a home with five adults and eight children, none of whom were working at the time (Tr. 266).

The claimant was evaluated by Dr. Annette Miles, Ph. D., a state consultative examiner, on May 2, 2006. During the evaluation, the claimant was noted to be slightly agitated, anxious but in a normal mood, and exhibiting poor contact (Tr. 238). The claimant reported that she has six children and was in a car accident on January 3, 2006 (Tr. 238). The claimant stated that her aunt and children were insane, she was sexually abused by her stepfather throughout her childhood, and she was hospitalized in when she was younger for 60 days for behavioral problems (Tr. 238). Dr. Miles noted that the claimant reported self-mutilation (cutting) and chronic feelings of emptiness, which Dr. Miles noted were symptoms of borderline personality disorder (Tr. 239). Dr. Miles diagnosed claimant with panic disorder without agoraphobia, amphetamine abuse in remission and assigned to claimant a GAF of 50 (Tr. 240).

In December 2006, the claimant began receiving mental health treatment at Midwest Health Associates from Dr. Everett Bayne, M.D. (Tr. 283). During her initial interview, the diagnostic impression was once again bipolar disorder (Tr. 283). Two weeks later, the claimant reported struggling with insomnia but was doing well (Tr. 282).

The claimant began taking Xanax for anxiety, and her dose was increased repeatedly (Tr. 277-79). In November 2007, the claimant presented with a flat affect and reports of worsening depression (Tr. 272).

On February 11, 2008, the claimant was evaluated by consultative examiner Dr. Kathleen Ward, Ph.D. (Tr. 309-13). The claimant reported problems with self-mutilation and indicated that her mother and brother provide most of the care for her children (Tr. 309). She described a past incident where she had threatened a coworker. The claimant also reported not discussing her childhood sexual abuse with her therapist, and therefore not dealing with that abuse (Tr. 310). Dr. Ward diagnosed the claimant with from post-traumatic stress disorder, mood disorder, and borderline personality disorder (Tr. 312).

State reviewing physician Joan Holloway, Ph.D. completed a Psychiatric Review Technique (PRT) form on March 19, 2008. She found that the claimant suffered from: (i) mood disorder and bipolar syndrome; (ii) anxiety-related disorders with recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress; and (iii) personality disorders with persistent disturbances of mood or affect, pathological dependence, passivity, or aggressivity, and intense, unstable interpersonal relationships and impulsive and damaging behavior (Tr. 325-29). Dr. Holloway also found that she was moderately limited in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace (Tr. 332), and markedly limited in ability to understand and remember detailed instructions, to carry out detailed instructions, and to interact with the general public (Tr. 336-37).

Finally, Tommie Smith, M.S., L.P.C. of Rural Area Counseling Center submitted a letter stating that she had been treating claimant for ten months on a weekly basis (Tr. 483). Ms. Smith wrote that the claimant was diagnosed with major depressive disorder and generalized anxiety disorder, and that the claimant deals with her anxiety and stress through self-mutilation (Tr. 483). Ms. Smith further noted that claimant's moods are "dramatic and unpredictable[,]" and that she has feelings of worthlessness and "recurring feelings of suicidal thoughts" (Tr. 483). She also wrote that the claimant's medications cause her to experience excessive sleepiness and that her impairment "hinders her ability to function in a social setting and or interactions with others (Tr. 483).

The ALJ assigned little weight to Ms. Smith's opinions about the severity of the claimant's limitations. He noted that she was not an acceptable medical source because she was not a physician, and that her opinion was undated. The ALJ also observed that the claimant responded well to treatment and that medication had resolved her problems (Tr. 20). This analysis of Ms. Smith's "other source" opinion evidence was deficient for several reasons.

First, although Ms. Smith is a "not an acceptable medical source," this is no basis for discounting her opinion about the severity of the claimant's limitations. The ALJ was required to analyze such "other source" evidence in accordance with the factors set out in 20 C.F.R. § 416.927(d). *See* Soc. Sec. Ruling 06-03p; *Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (noting that Soc. Sec. Rul. 06-03p "specifies that the factors for weighing the opinions of acceptable medical sources set out in 20 C.F.R. § 404.1527(d)

and § 416.927(d) 'apply equally to all opinions from medical sources who are not 'acceptable medical sources' as well as from 'other sources' [and] instructs the adjudicator to explain the weight given to opinions from these 'other sources,'' or otherwise ensure that the discussion . . . allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.") Those factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003), *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001).

Second, the ALJ failed to explain the significance of his observation that Ms. Smith's letter was undated. It may have meant he was unsure when Ms. Smith held those opinions about the claimant; if so, it was probably a good reason to re-contact Ms. Smith for clarification before deciding what weight to give her opinion under the applicable regulation. *See* 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain

all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."). *See also Maes v. Astrue*, 522 F.3d 1093, 1097-98 (10th Cir. 2008) ("[T]he ALJ generally must recontact the claimant's medical sources for additional information when the record evidence is inadequate to determine whether the claimant is disabled. . . . [W]hen the ALJ considers an issue that is apparent from the record, he has a duty of inquiry and factual development with respect to that issue."), *citing* 20 C.F.R. § 404.1512(e) and *Grogan v. Barnhart*, 399 F.3d 1257, 1263-64 (10th Cir. 2005). Furthermore, the record is devoid of treatment notes from Rural Health Area Counseling Center (where Ms. Smith saw and treated the claimant). This further militated in favor of re-contacting Ms. Smith before simply assigning little weight to her opinion about the claimant's limitations.

Because the ALJ failed to properly analyze the claimant's "other source" evidence from Ms. Smith, the Commissioner's decision must be reversed and the case remanded to the ALJ for further analysis. If such analysis results in any adjustments to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent herewith.

**DATED** this 30th day of September, 2011.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma